Clemente Farol ASTUDILLO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 25510.

United States Court of Appeals,
Ninth Circuit.

June 2, 1971.

Ronald J. Meltzer (argued), Seattle, Wash., Floyd V. Smith, Anchorage, Alaska, for appellant.

Paul Fenton (argued), Albert E. Stephan, Asst. U.S. Attys., Stan Pitkin, U. S. Atty., Seattle, Wash., John P. Boyd, Director, I&NS, Seattle, Wash., Stephen N. Suffin, Atty., I&NS, San Francisco, Cal., John N. Mitchell, Atty. Gen. of U. S., Washington, D. C., for appellee.

Before JERTBERG, ELY and KIL-KENNY, Circuit Judges.

PER CURIAM:

Appellant seeks a review of an order of the Board of Immigration Appeals dismissing his appeal from a decision of a Special Inquiry Officer directing petitioner's deportation to the Republic of the Philippines.

Petitioner is a native and citizen of the Republic of the Philippines. Prior to entering the United States, petitioner had been married twice: first to Purita Zabat, on January 28, 1958, and there are two children the issue of that marriage. Said marriage was dissolved in the State of Washington by a final decree of divorce procured by petitioner on March 14, 1968. The second marriage occurred on October 3, 1962, to Teodula Martinez. Said marriage was annulled in the Philippines on May 20, 1967. On August 3, 1968, at Renton, Washington, petitioner married Juanita C. Sarandi, a permanent resident alien.

He entered the United States on October 13, 1962, as a visitor for pleasure. He was granted a change of status to that of nonimmigrant student, and was authorized to remain in the United States until June 30, 1966.

On February 14, 1966, he applied for adjustment of status to that of a permanent resident. That application was denied on November 21, 1966 and petitioner was granted to January 3, 1967, to depart from the United States voluntarily.

On January 4, 1967, the Service ordered petitioner to appear before a Special Inquiry Officer to show cause why he should not be deported from the United States. Hearing was held before the Special Inquiry Officer on January 9, 1967, and at petitioner's request two continuances were granted by the Special Inquiry Officer to permit the petitioner to furnish evidence on the issue of his marriages. Hearings were held on February 10 and March 20, 1967 and March 21, 1969. By an order dated May 4, 1967, the Service, acting through its Special Inquiry Officer, denied petitioner's application for adjustment of status under Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1225. By order of October 17, 1967, the Board of Immigration Appeals affirmed the order of May 4, 1967.

On February 16, 1969, the Board granted petitioner's request to reopen. Further hearings were held before the Special Inquiry Officer. The Special Inquiry Officer on September 2, 1969, ordered petitioner deported from the United States to the Republic of the Philippines. On petitioner's appeal to the Board of Immigration Appeals, that Board on January 23, 1970, issued its decision dismissing the appeal and affirming the order of deportation.

In his order dated May 4, 1967, the Hearing Officer stated, *inter alia*:

"In a sworn statement before an immigration officer the respondent, on September 8, 1966 stated that he had never lived with Purita as her husband. On June 2, 1966 in a sworn statement before an investigator of this Service he had difficulty remembering his children's names and he could not state that he had supported the children. In his application for adjustment of status (Ex.2) he lists her as his wife.

"There was introduced into evidence a copy of a summons in an action in the Philippine courts (Ex.14), which alleges that the respondent entered into a bigamous marriage with Teodula Martinez Astudillo October 3, 1962 and that because of this bigamous marriage he left for the United States. The respondent has been unable to explain or straighten out his marital difficulties. Based on the statements he has made he has never assumed the responsibilities of a husband with respect to his first wife and two children and evidently was pursuing a meritricious (sic) relationship with Teodula Martinez."

In its order dismissing the appeal, dated October 17, 1967, the Board of Immigration Appeals stated, *inter alia*:

"Without detailing the evidence of record it is amply clear that respondent's course of conduct in the past and especially his dealings with the Immigration and Naturalization Service with principal emphasis upon statements made and testimony given to the Service, clearly precludes respondent from making a meritorious case.

"There is no question in our mind that respondent knowingly entered into a biagamous (sic) marriage, that he has made numerous conflicting statements and claims relative to his marital situation, that he is not supporting his two children, that much of his testimony especially relating to his marital situation was completely false. We cannot agree with respondent's counsel when he stated in oral argument on September 18, 1967 that re-

spondent's marital woes were simply a case of misunderstanding. The record shows that respondent gave numerous conflicting statements to the Service under oath in which he at first claimed he was married to one Purita Zabat Astudilla and then later vigorously denied he was ever married to her. However, he has recently filed suit for divorce against her. He denied, also under oath, of ever having been married to one Theodula Martinez Astudillo, yet on May 20, 1967 the Court of First Instance of Rizal, Quezon City, Philippines, nullified the marriage of respondent to said Theodula on the ground that the marriage was bigamous because respondent was already legally married to Purita. These facts speak for themselves."

In his order dated September 2, 1969, the Hearing Officer stated, *inter alia*:

"The fact that the respondent belatedly married a resident alien while he was under an order of deportation, after he failed to comply with the previous order in his case would not give him any persuasive equities under the circumstances in his case. He managed to stay here through private legislation. His credibility was totally destroyed by the numerous falsehoods he perpetrated during his hearing and investigation. The stability of this third relationship is suspect because his record shows that he is willing to enter into marital relationships, but has in both previous cases invariably shirked the responsibilities of his marriage. He has failed to support his two children in the Philippines. On the whole, his case is one which should not be given maximum relief from deportation as it is not in the interest of the United States to have him remain here. His is not just a case of misunderstanding as his attorney has asserted. His is a case of studied effort to defraud the Immigration Service by his falsehoods, and when this failed, to enter into a marriage to a permanent resident alien in an attempt to strengthen his case."

In its order of January 23, 1970, the Board of Immigration Appeals stated, *inter alia*:

"Respondent's marriage to a lawful resident alien following termination of his prior marriages by divorce is a favorable factor. However, this factor, standing alone, does not mitigate the fact that respondent during his deportation hearing gave false testimony with regard to his marital affairs. The conclusion that he was not supporting his children was drawn from his statement which indicated that his mother supports them (Ex.13, p. 14). Respondent has known since the special inquiry officer's order of May 4, 1967 that his failure to assume his responsibilities toward his children was a factor of importance to the administrative authorities. He has failed to furnish any substantial evidence that he did, in fact, support his children. Respondent has not requested voluntary departure. We find the special inquiry officer did not abuse his discretion in denying relief."

The scope of review in this type of case is extremely limited. We may not substitute our judgment for that of the Attorney General or his delegate. We may only inquire whether the manner in which the discretion was exercised was arbitrary, capricious or illegal.

As stated in Santos v. Immigration and Naturalization Service, 375 F.2d 262, at 264 (9th Cir. 1967):

"The extraordinary discretionary relief provided in Section 245 of the Act can only be granted in meritorious cases; the burden is always upon the alien to establish that his application for such relief merits favorable consideration. Matter of Ortiz-Prieto, supra, [B.I.A.Int. Dec. #1508, July 16, 1965]; Matter of A—, 9 I.&N. Dec. 249 (1961); Matter of G—, 9 I. &N. Dec. 38 (1960). See also 8 C.F. R. § 242.17(d)."

See also Cubillos-Gonzalez v. Immigration & N. Service, Los Angeles, Cal., 352 F.2d 782 (9th Cir. 1965).

528

■ We have carefully examined the record, including the transcripts of testimony taken before the Hearing Officers. Upon a consideration of the record as a whole, we are satisfied that discretion was properly exercised in this case and it cannot be said that the decision of the Special Inquiry Officer is arbitrary, capricious or illegal.

Affirmed.