MATTER OF MALDONADO-SANDOVAL

In Exclusion Proceedings

A–17196433

*Decided by Board October 31, 1973*

(1) Upon return to the United States following a brief absence abroad of an alien admitted for permanent residence, the legality of the alien's original admission for permanent residence can be questioned in exclusion proceedings in connection with his application for readmission, notwithstanding the *Fleuti-*type nature of his departure, and notwithstanding the absence of any indication that prior to his departure the lawfulness of his original admission for permanent residence had been challenged.*

(2) Applicant, in the instant case, was admitted to the United States for permanent residence on September 8, 1967, in possession of a special immigrant visa obtained by concealing from the consul his existing marriage to a Mexican national and by fraudulently representing himself to be the spouse of a U.S. citizen. Since he was not an alien having a lawful permanent residence in the United States, his return to this country on May 25, 1970, following a brief absence in Mexico is not within the ambit of *Rosenberg* v. *Fleuti,* 374 U.S. 449 (1963), and constitutes an "entry" within the meaning of section 101(a)(13) of the Immigration and Nationality Act upon which to predicate a ground of. exclusion.

EXCLUDABLE: Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)]—Obtained visa by fraud.

Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant, not in possession of an immigrant visa.

ON BEHALF OF APPLICANT:
Frederic A. Nervo, Esquire
995 Market Street
San Francisco, California 94103

ON BEHALF OF SERVICE:
Charles Gordon
General Counsel

This case is now before us on remand from the United States Court of Appeals for the Ninth Circuit, pursuant to stipulation of counsel dated August 8, 1972. That stipulation was based on our decisions in unreported *Matter of Lerma-Acosta,* A30 794 574 (BIA June 13, 1972) and unreported *Matter of Hernandez-Almaguer* (BIA June 14, 1972), which both counsel feel are inconsistent with the Board's holding in this case. On August 6, 1971, the immigration judge found the applicant excludable under the provisions of section 212(a)(20) of the Immigration and Nationality Act and

---

*Order of Board vacated and case remanded for further proceedings; see 518 F.2d 278 (1975).

directed that he be excluded and deported from the United States. An appeal from this decision was dismissed by the Board on November 22, 1971. Upon reconsideration, we are satisfied that no change is warranted in the order of the immigration judge or in our order dismissing the appeal therefrom.

The applicant is a 32-year-old married male alien, a native and citizen of Mexico, who was originally admitted to the United States for permanent residence on September 8, 1967. He was then in possession of a special immigrant visa issued on April 11, 1967 by an American consul in Mexico, who had found him to be exempt from the labor certification requirement of section 212(a)(14) of the Act as the spouse of a United States citizen. Although afforded every opportunity to do so, the applicant has not established that his prior marriage to a native and citizen of Mexico was legally terminated so as to prove that his marriage to a United States citizen is valid. He applied for admission as a returning resident alien at San Ysidro, California on May 25, 1970. He was returning from a two or three-day visit to Mexico. After an exclusion hearing, the immigration judge concluded that the applicant's original entry was not a lawful admission to permanent residence, that he could not be considered a returning lawful permanent resident, and that he is excludable under the provisions of section 212(a)(20) for not having in his possession at the time of his application for admission a valid immigrant visa or other valid entry document.

The facts, about which there is no dispute, have been fully stated in the immigration judge's order and in our decision dismissing the appeal. It is not necessary, therefore, to repeat them.

In *Matter of Lerma-Acosta*, supra, and *Matter of Carbajal de Garcia*, A17 206 984 (BIA December 5, 1969), both unreported, we held that where a *Fleuti*-type departure was established (see *Rosenberg* v. *Fleuti*, below), a record of lawful admission for permanent residence existed, and the lawfulness of that admission was questioned in exclusion proceedings, those proceedings should be terminated; and that the lawfulness of the alien's original admission would have to be determined in deportation proceedings, in which the standard of clear, convincing and unequivocal evidence set up in *Woodly* v. *INS*, 385 U.S. 276 (1966) applies. We recede from those holdings.

Entry is defined in section 101(a)(13) of the Immigration and Nationality Act as follows:

> The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the

United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary.

The language of section 101(a)(13) of the Act is clear. But for the exception of "an alien having a lawful permanent residence in the United States," the statute expressly defines the term "entry" for all other aliens to mean "any coming of an alien into the United States from a foreign port or place or from an outlying possession, whether voluntarily or otherwise." The doctrine enunciated in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), is that an innocent, casual and brief excursion by a resident alien outside the country's borders may not have been "intended" as a departure disruptive of his resident alien status and that he, therefore, may not have subjected himself to the consequences of an "entry" into the United States on his return. The pertinent portion of section 101(a)(13) interpreted by the Supreme Court in the *Fleuti* case, by its terms, relates only to "an alien having lawful permanent residence in the United States."

In *Lerma-Acosta*, supra, we cited *Wadman v. INS*, 329 F.2d 812 (C.A. 9, 1964) and *Itzcovitz v. Selective Service Local Bd. No. 6, N.Y., N.Y.*, 447 F.2d 888 (C.A. 2, 1971) in support of our posture that the *Fleuti* rationale should be applied in exclusion proceedings in the case of an alien whose original entry was unlawful. We agree with the Service's position stated in its motion for reconsideration that there is no authority in either *Wadman*, supra, or *Itzcovitz*, supra, to justify such a conclusion. These two cases did not reach the question of whether the legality of the aliens' immigrant status could have been questioned in exclusion proceedings upon return to the United States after a brief trip to Mexico.

*Itzcovitz*, supra, is not relevant to this case. It was a deportation proceeding and Itzcovitz was a lawful permanent resident alien. The case arose from a long history of dispute between the alien and both the Selective Service System and the Immigration and Naturalization Service. The alien sought a declaratory judgment that a contemplated three-week trip to Israel, to undertake a training course required by his employer, would not involve an entry within the meaning of section 101(a)(13) upon his return to the United States. The Second Circuit found that the alien would come within the *Fleuti* exception. While noting that the duration of the proposed trip—three weeks—would be longer than any previously held not to involve entry, the Court observed that it would still be of short duration. It stressed that the purpose of the trip would be to fulfill an employer's requirement for training and

477

would not reflect merely personal reasons. Further, and perhaps most important, the Court emphasized that the alien was "not in the posture of having taken the trip in disregard of the immigration consequences; rather he *** sought relief in advance" by bringing the declaratory judgment action. 447 F.2d at 894. See *Matter of Janati-Ataie*, Interim Decision No. 2170 (BIA 1972; A.G. 1972).

In *Wadman* v. *INS, supra,* and *Wong* v. *INS,* 358 F.2d 151 (C.A. 9, 1966), the only issue decided by the court was that in deportation proceedings the benefits of suspension of deportation under section 244 of the Act apply not only to aliens whose original entry into the United States was legal but also to those who entered illegally. In these cases the legality of the aliens' original admission for permanent residence was not questioned upon the aliens' return to the United States after a short trip to Mexico. In both cases the aliens were not detained for exclusion proceedings. They were admitted as returning resident aliens and sometime later deportation proceedings were commenced against them. Under these circumstances, the court determined that a brief visit to another country did not break the continuous period of physical presence in the United States required to establish eligibility for suspension of deportation.

Section 235(b) of the Act prescribes the manner in which an inquiry is to be conducted for all aliens arriving at ports of the United States. Section 236 sets forth the procedure "to determine whether an arriving alien shall be allowed to enter or shall be excluded and deported." This section of the Act further provides that the determination by the immigration judge "shall be based only on the evidence produced at the inquiry" and "shall be the sole and exclusive procedure for determining admissibility." There is no authority in this statute for proceedings partly in exclusion and partly in deportation. Even *Kwong Hai Chew* v. *Colding,* 344 U.S. 590 (1952), which deals with due process rights of a lawfully admitted returning alien to be notified of charges against him and to be heard in opposition thereto, does not reach the question of whether the alien is to be treated in exclusion or deportation proceedings.

Pursuant to section 211(a) of the Act, an immigrant is required to present an entry document at the time of application for admission. However, under section 211(b), a returning resident immigrant defined in section 101(a)(27)(B) may be readmitted to the United States by the Attorney General in his descretion, under such conditions as may be by regulations prescribed, without being required to obtain documentation authorizing reentry. Section 101(a)(27)(B) defines a returning resident immigrant as "an

478

immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad." The Service has by regulations (8 CFR 211.1(b)) provided that in lieu of an immigrant visa, an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding one year may present Form I-151, Alien Registration Receipt Card.

Section 291 of the Act provides that whenever any person makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon him to establish that he is not subject to exclusion under any provision of the Act and, "*if an alien, that he is entitled to the nonimmigrant, quota immigrant, or nonquota immigrant status claimed,* as the case may be." (Emphasis supplied.) When the applicant appeared at the port of entry on May 25, 1970, he did not present a Form I-151. He claimed that when he left for Mexico for his two or three-day visit he had a temporary I-151 and that he lost it while there. The applicant's immigrant visa (Ex. 3), produced by the Service at the exclusion hearing, shows that the applicant was admitted to the United States as an immigrant on September 8, 1967 at San Ysidro, California in the nonquota classification SA-1, an alien born in an independent country of the Western Hemisphere. In order to qualify for admission as a returning resident alien as specifically defined in the statute, it was necessary that (1) the applicant have the status of a lawfully admitted immigrant for permanent residence and (2) that if he had that status, he was returning from a temporary visit abroad. Accordingly, when the immigration inspector had some doubt about this applicant's immigrant status, he properly detained him for exclusion proceedings.

The evidence elicited at the exclusion hearing clearly shows that the applicant concealed from the United States Consul his existing marriage to a Mexican national, represented that he was married to a United States citizen, and secured an exemption from the labor certification requirements of the statute, and a visa, all on the basis of the illegal marriage. Although the applicant presented a decree showing that he was divorced from his wife in Mexico on June 19, 1965, investigation revealed that no such divorce was ever granted and that the document he presented was fraudulent. Our evaluation of the evidence presented at the exclusion hearing convinces us that there is not the slightest question that from the inception of his residence in the United States he was fully aware that he had obtained his visa illegally, had entered illegally with that document, and that his residence thereafter was illegal. In this case, the Service has proven beyond any question, under any

479

standard of proof, that the applicant has never achieved the status of a lawful permanent resident alien.

Since the applicant was not an alien having lawful permanent residence in the United States, his attempted entry to the United States after a brief absence in Mexico is not within the ambit of *Rosenberg* v. *Fleuti*, supra. Under the explicit terms of section 101(a)(13) of the Act, the applicant's return to the United States even though only after a brief visit, is an "entry." Hence, an adjudication of the applicant's admissibility in exclusion proceedings is proper.

It has been established that the respondent is not a lawful permanent resident alien. At the time of his application for admission, he was not in possession of a valid unexpired immigrant visa or other valid entry document as required under section 212(a)(20) of the Act. We are satisfied that the record supports the immigration judge's finding of excludability. After reconsideration of our previous decision, the following order will be entered.

ORDER: No change is made in the Board's order dated November 22, 1971.

**Maurice A. Roberts, Chairman, Dissenting:**

I disagree with the conclusion reached by the majority of this Board. I would terminate the proceedings.

The applicant is an alien who was admitted to the United States for permanent residence on July 31, 1967 on presentation of an immigrant visa. After a two-day visit with relatives in Mexico, he applied for readmission as a returning permanent resident and was excluded. There is no indication that prior to his departure the lawfulness of his original admission for permanent residence had been challenged by the Immigration and Naturalization Service. It is clear that this brief, casual and innocent departure would not be considered meaningfully interruptive of his permanent residence here under the guidelines laid down in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), had the lawfulness of his original admission remained unquestioned. The issue presented is whether, in the face of such a *Fleuti*-type departure, the lawfulness of the original admission should be adjudicated in exclusion proceedings, as here, or in deportation proceedings, in which the alien would have an array of additional rights and remedies.

The importance of the issue transcends the immediate facts of this case. There is no general statute of limitations in the immigration laws. Thus, the principle laid down by the Board today applies not only to the subject of this proceeding, who had resided here for

under three years before he made his brief departure, but governs also the cases of aliens who have lived here continuously as permanent residents for fifty years or more.

In our unreported decision in *Matter of Carbajal de Garcia* (A17 206 984, December 5, 1969) we stated:

...Where there exists a record of lawful admission for permanent residence, and the lawfulness of that admission is called into question in exclusion proceedings, the proceedings should be terminated, as here, where a *Fleuti*-type departure is made out. This leaves the way open for the Service to issue an Order to Show Cause in deportation proceedings, if it so desires, challenging the lawfulness of the applicant's original admission. The applicant would then be in the same position as if she had never departed from the United States. The Government would have to establish her deportability by clear, unequivocal and convincing evidence and she would have access to all the remedies available to resident aliens.

We later adhered to that rule in our unreported decision in *Matter of Lerma-Acosta* (A30 794 574, June 13, 1972). We there stated:

...We conclude that [the *Carbajal de Garcia*] rule, which we apply to this case, is in keeping with the congressional intent underlying section 101(a)(13) of the Act, as construed in *Fleuti*.

As the Supreme Court pointed out in *Fleuti*, 374 U.S. at 461–462, "the insignificance of a brief trip to Mexico or Canada bears little rational relation to the punitive consequences of subsequent excludability...[I]t effectuates congressional purpose to construe the intent exception to § 101(a)(13) as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." Rejecting the notion that the statutory definition of "entry" was to be rigidly and literally applied, the Court left the way open for the relevant factors to be developed "by the gradual process of judicial inclusion and exclusion." It noted that "The more civilized application of our immigration laws given recognition by Congress in § 101(a)(13) and other provisions of the 1952 Act protects the resident alien from unsuspected risks and unintended consequences of such a wholly innocent action" (p. 462).

The difference between the rights of aliens in exclusion and deportation proceedings was pointed out in *Leng May Ma v. Barber*, 357 U.S. 185 (1957). Other crucial distinctions have since emerged. The alien in expulsion proceedings is entitled to all the procedural safeguards spelled out in section 242(b) of the Act. The Government bears the burden of proof and deportability must be established by the "clear, unequivocal, and convincing" rule laid down in *Woodby v. INS*, 385 U.S. 276 (1966). Various substantive rights are available in expulsion proceedings: The alien may designate the country of deportation under section 243(a). He may seek temporary withholding of deportation on persecution grounds under section 243(h). He may apply for suspension of deportation or voluntary departure under section 244, or for adjustment of status under section 245 or section 249. Finally, if aggrieved by the final decision of this Board, the alien in a deportation proceeding has direct recourse to a court of appeals and an automatic stay of deportation under the statutory form of judicial review provided by section 106(a) of the Act.

The alien in an exclusion proceeding is governed by an entirely different set of principles. No matter how long he may have resided here before his brief

departure, or how deserving his case may be, the alien seeking admission is ineligible for suspension of deportation, voluntary departure, or section 243(h) relief. If ordered excluded, he may not select the country of deportation but under section 237(a) must be returned to the country whence he came. Under section 106(b), judicial review of a final exclusion order may be had "by habeas corpus proceedings and not otherwise."

The courts have construed section 101(a)(13) as evincing a congressional intent to ameliorate the harshness of the old "reentry" doctrine. In *Wadman v. INS*, 329 F.2d 812 (C.A. 9, 1964), the *Fleuti* rationale was applied in a suspension of deportation context in the case of an alien whose original entry was unlawful. And see *Itzcovitz v. Selective Service Local Bd. No. 6, N.Y., N.Y.*, 447 F.2d 888 (C.A. 2, 1971).

It is true that section 101(a)(13) in terms refers to an alien "having a lawful permanent residence in the United States." However, we think that it does not do violence to the congressional intent, but rather is in keeping with the provision's ameliorative purpose, to construe it as applicable to cases such as this, where there exists a record of lawful admission for permanent residence. Where the Service questions the lawfulness of that admission, following a *Fleuti*-type departure, to require the Service to make that challenge in deportation proceedings obviates the irrational effects which would otherwise flow from such a meaningless, brief departure. This approach is consonant with the congressional design that an alien's substantial rights should not be adversely affected by such a casual and innocent action.

Any other conclusion would be incompatible with the ameliorative purpose of section 101(a)(13). To restrict the *Fleuti* doctrine exclusively to situations where the alien's original entry was lawful would open the door to results that Congress could hardly have contemplated. To cite just one, a deportable alien with long years of physical presence who would be clearly eligible for suspension of deportation would suddenly lose access to this valuable privilege if he stepped across one of our land borders, however briefly. The possibility of such an irrational consequence is obviated by the conclusion we now reach. At the same time, this solution imposes no substantial impediment to effective enforcement of the immigration laws.

Ten years have now elapsed since *Fleuti* was announced. Congress has evinced no displeasure with its benign approach to the reentry doctrine. In my estimation, the rule we laid down in *Carbajal de Garcia* and *Lerma-Acosta* was in keeping with the Congressional intent underlying section 101(a)(13) of the Act, as construed in *Fleuti*. I would not recede from that rule.