Ponciano MALDONADO–SANDOVAL, Appellant,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 72–2023.

United States Court of Appeals, Ninth Circuit.

May 19, 1975.

Frederick A. Nervo (argued), San Francisco, Cal., for appellant.

Bernard Hornbach, Sp. U. S. Atty., I&NS, for respondent.

## OPINION

Before ELY, HUFSTEDLER and KILKENNY, Circuit Judges.

PER CURIAM:

Petitioner, a native and citizen of Mexico, appeals from an order of the Immigration and Naturalization Service ("INS") excluding him from admission into the United States. Petitioner was granted status as a permanent resident alien in September 1967; he was issued a visa by the United States consul in Tijuana, Mexico, who found him exempt from the labor certification requirements of 8 U.S.C. § 1182(a)(14) because of his marriage to a United States citizen in January 1967. In 1970 an investigation by the INS disclosed that petitioner might have entered the United States fraudulently, in that apparently he was already married to a Mexican citizen when he married again in 1967.

In May 1970 petitioner went to Mexico on personal business for two or three days. When he sought to return to the United States on May 25, 1970, he was refused admission. In December 1970, after an exclusion hearing, the INS determined that petitioner was excludable under 8 U.S.C. § 1182(a)(20) as an immigrant who was not in possession of a *valid* immigrant visa or other reentry document.[1] The theory of the INS is

---

1. Section 1182(a) provides in relevant part that:

"Except as otherwise provided in this Act, the following classes of aliens shall be ineli-

that petitioner's visa is invalid because his second marriage was bigamous.[2]

Petitioner argues that because of his status as a permanent resident alien and also because his (attempted) return to the United States in May 1970 did not constitute an "entry," he is entitled to deportation proceedings rather than exclusion proceedings. We agree.

 The differences between proceedings of exclusion and those of deportation are significant.[3] It is certainly possible that if petitioner had been given the benefit of deportation proceedings, his cause might have been successful. Therefore, the relief petitioner seeks—a de novo determination of his case in deportation proceedings—is not insubstantial.

Although 8 U.S.C. § 1182(a) does not by its terms mention "entry," it is plain that this section specifies the classes of aliens excludable *at the time of entry.* (8 U.S.C. § 1251(a)(1);[4] *see, e. g.,* Rosenberg v. Fleuti (1963), 374 U.S. 449, 451–52, 83 S.Ct. 1804, 10 L.Ed.2d 1000; Itzcovitz v. Selective Service Local Bd. No. 6, N.Y., N.Y. (2d Cir. 1971), 447 F.2d 888, 891–92; Zimmerman v. Lehmann (7th Cir. 1965), 339 F.2d 943, 947–49.) We conclude that section 1182(a) is not applicable to petitioner, and that exclusion proceedings were therefore inappropriate because petitioner was not an alien seeking "entry" into the United States in May 1970.

At the time of his attempted return to the United States petitioner had already been granted the status of permanent

gible to receive visas and shall be excluded from admission into the United States.

" . . .

"(20) Except as otherwise specifically provided in this Act, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 211(a) [§ 1181(a) of this title];

" . . . "

2. While the provisional decision to exclude petitioner at the border on May 25, 1970, was based on the fact that he was not carrying any visa or other reentry document, valid or not, the final decision to deny him admission to the United States after exclusion proceedings was predicated on the theory that petitioner's visa was invalid because fraudulently procured.

3. The difference between the rights of aliens in exclusion and deportation proceedings was pointed out in Leng May Ma v. Barber (1957), 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246. Other crucial distinctions have since emerged. The alien in expulsion proceedings is entitled to all the procedural safeguards spelled out in 8 U.S.C. § 1252(b). The Government bears the burden of proof and deportability must be established by the "clear, unequivocal, and convincing" rule laid down in Woodby v. INS (1966), 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d

362. Various substantive rights are available in expulsion proceedings: The alien may designate the country of deportation under § 1253(a). He may seek temporary withholding of deportation on persecution grounds under § 1253(h). He may apply for suspension of deportation or voluntary departure under § 1254; or for adjustment of status under §§ 1255 or 1259. Finally, if aggrieved by the final decision of the Board of Immigration Appeals, the alien in a deportation proceeding has direct recourse to a court of appeals and an automatic stay of deportation under the statutory form of judicial review provided by § 1105a(a).

The alien in an exclusion proceeding is governed by an entirely different set of principles. No matter how long he may have resided here before his brief departure or how deserving his case may be, the alien seeking admission is ineligible for suspension of deportation, voluntary departure, or § 1253(h) relief. If ordered excluded, he may not select the country of deportation but under § 1227(a) must be returned to the country whence he came. Under § 1105a(b), judicial review of a final exclusion order may be had "by habeas corpus proceedings and not otherwise."

4. Section 1251(a)(1) provides that:
"Any alien in the United States (including an alien crewman) shall, upon order of the Attorney General, be deported who—at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;
" . . . "

resident alien. His brief visit to Mexico did not manifest "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." (Rosenberg v. Fleuti, *supra,* 374 U.S. at 462, 83 S.Ct. at 1812.) Thus petitioner was not subject to exclusion proceedings. To deprive petitioner of the benefit of deportation proceedings in the determination of his case merely because of his brief visit across the border would do violence to both the letter and the spirit of *Fleuti*:

> "[A]n innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." 374 U.S. at 462, 83 S.Ct. at 1812.

(*See also* Itzcovitz v. Selective Service Local Bd. No. 6, *supra,* 447 F.2d at 891–94; Zimmerman v. Lehmann, *supra,* 339 F.2d at 947–49; *cf.* Wadman v. Immigration & Naturalization Service (9th Cir. 1964), 329 F.2d 812, 815–16.)[5]

When evidence appears, during an exclusion proceeding, that the alien has been theretofore granted residence status and is seeking to return to the United States after a brief visit outside the United States, the exclusion proceeding shall be terminated. If there is also evidence that the alien may have fraudulently secured his residence status, the INS can thereupon institute deportation proceedings against him.[6]

The order of the Board of Immigration Appeals is vacated and this case is remanded for proceedings consistent with the views herein expressed.

---

5. The facts in the case at bar bear no resemblance to those in Munoz-Casarez v. Immigration & Naturalization Service (9th Cir. 1975), 511 F.2d 947.

6. This resolution of the case adopts, in effect, the procedure outlined by the Board of Immigration Appeals in several of its unreported decisions.