## MATTER OF LEAL

### In Exclusion Proceedings

#### A-31283641

*Decided by Board October 15, 1975*

Respondent, who, following admission to the United States for permanent residence, departed to Canada with his girlfriend on a one-day trip undertaken expressly in connection with a scheme whereby she would obtain her immigrant visa through fraud—a purpose contrary to the immigration laws—did not make an "innocent" and "casual" departure within the ambit of *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). Hence, his case does not fall within the scope of *Maldonado-Sandoval v. INS*, 518 F.2d 278 (1975), and upon his return from Canada he sought to make an "entry" within the meaning of section 101(a)(13) of the Immigration and Nationality Act, upon the basis of which exclusion proceedings are predicated.

EXCLUDABLE:   Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of valid immigrant visa or other valid entry document.

ON BEHALF OF APPLICANT:   Ralph M. Schelly, Esquire
100 N. LaSalle Street
Chicago, Illinois 60602

This is an appeal from an order of an immigration judge finding the applicant excludable from the United States on the above grounds, and directing that he be excluded and deported from the United States. The appeal will be dismissed.

The applicant is a 26-year-old married male alien, native and citizen of Mexico, who was admitted to the United States for permanent residence on November 21, 1973 on the basis of his marriage to Margarita Oyola, a United States citizen, in Chicago, Illinois on April 7, 1973. On March 4, 1974, after a one-day trip to Toronto, Canada, he attempted to reenter the United States as a returning resident. His inspection was deferred on April 5, 1974 he received notice that he was being held in exclusion proceedings on the grounds that he may come within section 212(a)(20) of the Immigration and Nationality Act (no valid immigrant visa) since it appeared that the marriage upon which his visa was based was not bona fide (Exh. 1).

At the exclusion hearing, at which he was represented by present counsel, the applicant testified that when he went to Canada on March

3, 1974 he was accompanied by a woman named Maria Rosa Flores, who was the mother of his child and with whom he was then living (Tr. pp. 12–13). Under questioning by the immigration judge, the applicant testified further that he knew Maria Rosa Flores was going to Toronto to obtain an immigrant visa on the basis of *her* marriage to a United States citizen (Tr. pp. 52–53). The applicant also testified that he never lived with his United States citizen spouse after their marriage because she had learned that his "sweetheart," Maria Rosa Flores, was pregnant, although he claimed that he intended to live with his wife and denied entering into the marriage solely for the purpose of securing immigration benefits (Tr. pp. 52–53).

Counsel initially moved to terminate exclusion proceedings on the ground that the applicant's one-day journey to Toronto was a "brief, innocent and casual" departure within the meaning of the Supreme Court's holding in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), and thus did not subject the applicant to the consequences of an "entry" under section 101(a)(13) of the Act upon his attempt to return to the United States (Tr. pp. 7–8). The immigration judge reserved ruling on the motion pending the receipt of evidence.

In his decision, entered on January 28, 1975, the immigration judge concluded that in view of the applicant's testimony that he had been living with Maria Rosa Flores at the time he obtained his immigrant visa on the basis of his marriage to Margarita Oyola (Tr. p. 52, lines 12–13), the visa was thus fraudulently obtained and invalid, rendering the applicant inadmissible under section 212(a)(20) of the Act. In rejecting counsel's motion to terminate exclusion proceedings, the immigration judge relied on our decision in *Matter of Maldonado-Sandoval*, 14 I. & N. Dec. 475 (BIA 1974), in which we held that the lawfulness of an alien's original admission for permanent residence can be questioned in *exclusion* proceedings in connection with an application for readmission to the United States, *notwithstanding* the *Fleuti*-type nature of his departure.

However, subsequent to the immigration judge's decision, the Ninth Circuit Court of Appeals reversed our decision in *Maldonado-Sandoval*, supra, and held that:

"When evidence appears, during an exclusion proceeding that the alien has been theretofore granted residence status and is seeking to return to the United States after a brief visit outside the United States, the exclusion proceeding shall be terminated. If there is also evidence that the alien may have fraudulently secured his residence status, the Immigration and Naturalization Service can thereupon institute deportation proceedings against him." *Maldonado-Sandoval* v. *INS*, 518 F.2d 278 (C.A. 9, 1975).

Although in the above quotation the court speaks of aliens who are returning from "brief" visits outside the United States, it seems clear that it is referring to those making *Fleuti*-type departures, which must

also be "innocent" and "casual" according to the Supreme Court's language in *Rosenberg* v. *Fleuti*, supra, which is quoted by the Court of Appeals in *Maldonado-Sandoval* v. *INS*, supra. We must therefore decide whether the applicant's one-day trip to Canada, concededly "brief," can also be characterized as "innocent" and "casual" so as to bring his attempted return to the United States within the ambit of *Rosenberg* v. *Fleuti*, supra, and thus within the holding of *Maldonado-Sandoval* v. *INS*, supra. We conclude that it cannot.[1]

In *Fleuti* the Supreme Court enunciated certain tests for determining whether an alien's departure reflects an intent to depart in a manner meaningfully interruptive of his permanent resident status, so that he would be making an "entry" upon his return. With respect to the "innocence" of the excursion, the Supreme Court noted that if the purpose of leaving the United States is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful, *Rosenberg* v. *Fleuti*, supra.

Applying this criterion to the present case, it is clear that the applicant's trip to Toronto cannot be considered "innocent." By his own testimony he has implicated himself in a scheme whereby his girlfriend would obtain her immigrant visa through fraud, and his trip to Canada with her was undertaken expressly for this purpose. In fact the applicant's testimony establishes that his own immigrant visa was secured through similar fraudulent means some months earlier. It is therefore difficult to view his foreign excursion as "casual," either. See *Matter of Valdovinos*, 14 I. & N. Dec. 438 (BIA 1973) and *Matter of Valencia-Barajas*, 13 I. & N. Dec. 369 (BIA 1969).

We therefore find that the applicant *was* seeking to make an "entry" into the United States within the meaning of section 101(a)(13) of the Immigration and Nationality Act when he sought readmission on March 4, 1974, and that the immigration judge properly refused to terminate exclusion proceedings, although he did so for other reasons previously discussed. We also concur in the immigration judge's conclusion that the respondent is excludable from the United States under section 212-(a)(20) of the Act. The decision of the immigration judge will therefore be affirmed and the following order will be entered.

ORDER: The appeal is dismissed.

---

[1] We note at this point that the present case did *not* arise in the Ninth Circuit. Although we are bound by that Court of Appeals' determination in *Maldonado-Sandoval* with respect to cases emanating from that jurisdiction, our finding herein that the applicant does *not* come within the scope of that holding permits us to reserve, for the present, the question of whether to apply it in cases arising outside of the Ninth Circuit.