## MATTER OF RANGEL

### In Exclusion Proceedings

### A-34670198

### *Decided by Board April 26, 1976*

(1) Applicant was admitted to the United States for permanent residence on April 22, 1975, as the unmarried daughter of a United States citizen because applicant and her father had falsely stated to the consular officer that applicant was not married. Following her admission for permanent residence, applicant departed the United States for Mexico on three separate occasions, and on May 3, 1975, she was detained for exclusion proceedings when attempting to reenter this country from Mexico.

(2) The rationale expressed by the Supreme Court in *Rosenberg v. Fleuti*, 374 U.S. 449, respecting the effect of a brief departure from the United States on resident alien status, applies in the case of a resident alien whose original entry was unlawful.

(3) In this case, there exists a record of lawful admission for permanent residence. The applicant did not make an "entry" within the meaning of section 101(a)(13) of the Immigration and Nationality Act when she attempted reentry into this country on May 3, 1975. Therefore, the proper forum in which to adjudicate the lawfulness of applicant's original admission is in a deportation proceeding with the applicant entitled to the attendant safeguards thereof.

(4) Board withdraws from its contrary opinion expressed in *Matter of Maldonado-Sandoval*, 14 I. & N. Dec. 475, to the extent the views expressed therein are inconsistent with this opinion.

EXCLUDABLE:  Act of 1952—Sections 212(a)(14), 212(a)(19), and 212(a)(20), I. & N. Act [8 U.S.C. 1182(a)(14), 8 U.S.C. 1182(a)(19), 8 U.S.C. 1182(a)(20)]—alien excludable by reason of not having required labor certification; by reason of having obtained immigrant visa by fraud or willful misrepresentation of material fact; and by reason not being in possession of a valid unexpired immigrant visa or other valid entry document.

ON BEHALF OF RESPONDENT:
Luis A. Velarde, Jr.
Director, U.S. Catholic Conference
700 S. Santa Fe
El Paso, Texas 79901

ON BEHALF OF SERVICE:
B. J. Rumaker, Esquire
Trial Attorney

The applicant appeals from the July 9, 1975 decision of the immigration judge finding her excludable under sections 212(a)(14), 212(a)(19)

and 212(a)(20) of the Immigration and Nationality Act. The appeal will be sustained and the record will be remanded.

The applicant, who was born on June 29, 1954, is a native and citizen of Mexico. She was admitted to the United States as a permanent resident on April 22, 1975. Pursuant to section 212(a)(14) of the Act, respondent was granted an exemption from the requirement of a labor certification as the unmarried minor daughter of a United States citizen.

After her entry on April 22, 1975, the applicant departed from the United States to Mexico and then sought to reenter the United States on May 3, 1975. Following an inspection by an immigration officer, she was detained for a hearing in exclusion proceedings and was served with an official notice (Form I-122). The notice informed her that she appeared to come within the exclusion provisions of 212(a)(19) of the Act as an immigrant who obtained her visa by fraud.

The record reveals that the applicant was married to Gustavo Pichardo-Rodriguez in Mexico on August 28, 1972; that she was married to him at the time she entered the United States on April 22, 1975; and that at the time of the application for an immigrant visa, she and her father (petitioner) falsely stated to the American Vice Consul in Mexico that the applicant was not married. The applicant admitted to the aforementioned facts at her hearing.

At the hearing, the applicant testified that upon her admission to the United States on April 22, 1975, she went to live with an aunt in El Paso, Texas for approximately seven days; that during that seven-day period, she entered Mexico on two separate occasions to visit her mother's home in Juarez. The applicant stated that after the seven-day period in the United States she again went to her mother's home in Juarez, Mexico in order to obtain her clothes and remained there until she attempted to reenter the United States on May 3, 1975.

The record contains a copy of a divorce decree issued by a court in the state of Chihuahua, Mexico on June 24, 1975 which purportedly terminated the marriage of the applicant and Gustavo Pichardo-Rodriguez.

On appeal, the applicant's accredited representative contends that a deportation hearing was appropriate in this case, and that the immigration judge erred by conducting a hearing in exclusion proceedings. The applicant relies on the doctrine enunciated in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963). In that case the Supreme Court held that an innocent, casual and brief excursion by a resident alien outside the country's borders may not have been "intended" as a departure disruptive of his resident alien status and that he, therefore, may not have subjected himself to the consequences of an "entry" into the United States on his return.

The issue before us is whether the *Fleuti* rationale expressed above should be applied in the case of a resident alien whose original entry was

unlawful. If we conclude that the applicant's attempted return to the United States on May 3, 1975 did not constitute an "entry", then she is entitled to deportation proceedings rather than exclusion proceedings.

In *Matter of Maldonado-Sandoval*, 14 I. & N. Dec. 475 (BIA 1973; amended 1974), the facts related to an applicant who was admitted for permanent resident, in possession of a special immigrant visa obtained by concealing from an American Consul his existing marriage to a Mexican national and by fraudulently representing himself to be the spouse of a United States citizen. The applicant went abroad for a brief period and was then detained for a hearing in exclusion proceedings when he attempted to reenter the United States. In that case we concluded that the legality of the alien's original admission for permanent residence can be questioned in exclusion proceedings in connection with his application for readmission, notwithstanding the *Fleuti*-type nature of his departure, and notwithstanding the absence of an indication that prior to his departure the lawfulness of his original admission for permanent residence had been challenged. We further concluded in *Matter of Maldonado-Sandoval*, supra, that since the applicant was not a lawful permanent resident, his return to the United States following a brief absence in Mexico is not within the ambit of *Rosenberg* v. *Fleuti*, supra, and constitutes an "entry within the meaning of section 101(a)(13).[1] of the Act upon which to predicate a ground for exclusion.

On appeal to the United States Court of Appeals for the Ninth Circuit in *Maldonado-Sandoval* v. *INS*, 518 F.2d 278 (C.A. 9, 1975), the court held that:

When evidence appears during an exclusion proceeding, that the alien has been therefore granted residence status and is seeking to return to the United States after a brief visit outside the United States, the exclusion proceeding shall be terminated. If there is also evidence that the alien may have fraudulently secured his residence status, the INS can thereupon institute deportation proceedings against him.

In so holding the court was of the opinion that to deprive the petitioner of the benefit of deportation proceedings in the determination of his case

---

[1] Section 101(a)(13) of the Immigration and Nationality Act provides that:
The term "entry" means any coming of an alien into the United States from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary; Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradiction, or other legal process shall be held to be entitled to such exception.

merely because of his brief visit across the border would do violence to both the letter and spirit of *Rosenberg* v. *Fleuti*, supra.[2]

In view of the ruling of the Court of Appeals for the Ninth Circuit in *Maldonado-Sandoval*, we withdraw from the contrary position expressed by this Board in *Matter of Maldonado-Sandoval*, supra. In this case there exists a record of lawful admission for permanent residence. Further, we fine that the applicant did not make an "entry" within the meaning of section 101(a)(13) of the Act. Therefore, it follows that a deportation proceeding is the proper forum in which to adjudicate the issue of the lawfulness of the applicant's original admission. We conclude that the applicant is entitled to the procedural safeguards inherent in a deportation proceeding. Accordingly, we shall sustain the appeal and remand the record to the immigration judge for further proceedings consistent with the above opinion.

**ORDER:** The appeal is sustained and the record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion.

Louis P. Maniatis, Member, dissents without opinion.

**Warren R. Torrington, Member, Dissenting:**

I respectfully dissent.

The decision of the Court of Appeals in *Maldonado-Sandoval* v. *INS*, 518 F.2d 278 (C.A. 9, 1975), is, of course, binding upon us with regard to cases arising within the Ninth Circuit. It is not binding upon us in other jurisdictions. In my view, the wiser course would be to await the views of at least one other court of appeals before applying the Ninth Circuit's holding nationwide.

In *Maldonado-Sandoval* v. *INS*, supra, a two-or-three-day absence from the United States was involved. Here, the applicant appears to have stayed out of the United States considerably longer. When she left she knew very well that she had not been eligible for admission to the United States. Her departure to Mexico can therefore not be considered an "innocent" one. Thus, it appears to me that she did not make a *Fleuti*-type departure when she left for Mexico. Moreover, she obviously departed with the intent to violate our immigration laws by seeking another unlawful admission to the United States. The record, including her actual application for admission, on May 3, 1975, clearly showed that intent. Inasmuch as the applicant left for the purpose of accomplishing an objective contrary to the policy of immigration laws, her departure was also meaningfully interruptive of any permanent residence she might have acquired.

---

[2] Pursuant to the court's order, this Board's order in *Matter of Maldonado-Sandoval*, supra, was vacated, and the case was remanded to us for further proceedings consistent with views expressed by the court.

In *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963), at page 461, the Supreme Court stated, ". . . we do not think Congress intended to exclude aliens long resident in this country after lawful entry who have merely stepped across an international border and returned in 'about a couple hours.' " This applicant was not a "long resident in this country," had not made a "lawful entry," and had not "merely stepped across an international border and returned 'in about a couple hours.' " On the contrary, she had, at best, been in this country only for a few hours or days, had not made a lawful entry, and had obviously been absent from this country for a considerable time. Thus, there was no *Fleuti*-type departure, and the Ninth Circuit's decision in *Maldonado-Sandoval* v. *INS*, supra, *cannot* govern this case.

The appeal should be dismissed.