Marcelino **MARTIN–MENDOZA,**
**Petitioner,**

v.

**IMMIGRATION & NATURALIZATION**
**SERVICE, Respondent.**

**No. 72–2054.**

United States Court of Appeals,
Ninth Circuit.

July 1, 1974.

Gary H. Manulkin (argued), Los Angeles, Cal., for appellant.

Rex Heeseman, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and CRARY,* District Judge:

## OPINION

DUNIWAY, Circuit Judge:

Martin-Mendoza (Martin) seeks review of an order of deportation. The facts, as found by the I&NS hearing officer, are as follows:

Martin, a citizen of Mexico, was admitted to this country as a permanent resident in 1961. On November 20, 1966, Martin went to Tijuana, Mexico. There he met with two aliens and began making arrangements to facilitate their illegal entry into the United States. Knowing that the aliens did not have proper border-crossing papers, Martin agreed to supply forged papers and transportation to Los Angeles in exchange for future payments of over $100.00 per person. Three days later Martin returned to Tijuana where one of the aliens supplied him with a personal photograph. On November 27, 1966, he again went to Tijuana and this time gave the aliens false border-crossing cards. Later that day Martin met with the two aliens and a third person, Avalos-Magallon, in San Ysidro, California. He took possession of the false border-crossing cards and the four men, accompanied by Martin's common law wife, proceeded north in Martin's car. Shortly thereafter they were stopped and arrested by I&NS agents. On April 3, 1967, Martin pleaded guilty to one count of illegally transporting aliens and was fined $150.00. These facts support a

---

* Honorable E. Avery Crary, United States District Judge, Los Angeles, California, sitting by designation.

finding of deportability, and Martin does not argue otherwise.

■ In such a case as this, "[t]he scope of review . . . is extremely limited." Astudillo v. I&NS, 9 Cir., 1971, 443 F.2d 525, 527. The determination of the I&NS can be overturned only if there is "abuse of discretion, lack of procedural due process or where a finding required by the statute is unsupported by reasonable, substantial or probative evidence." Kasravi v. I&NS, 9 Cir., 1968, 400 F.2d 675, 677, n. 3. The standards for review, though not the grounds, are set by statute, 8 U.S.C. §§ 1105a(a)(4), 1252; Espinoza Ojeda v. I&NS, 9 Cir., 1969, 419 F.2d 183, 186–187. The fact findings of the I&NS must be accepted by this court if they are supported by substantial evidence. See, e. g., Soo Yuen v. I&NS, 9 Cir., 1972, 456 F.2d 1107, 1108; Cubillos-Gonzalez v. I&NS, 9 Cir., 1965, 352 F.2d 782, 783; Tejeda v. I&NS, 9 Cir., 1965, 346 F.2d 389, 391–392.

We turn to Martin's arguments.

1. *Failure to make sufficient efforts to find Avalos-Magallon.*

■ When Martin and his companions were arrested, Avalos-Magallon had a valid border-crossing card. There were two hearings before a special inquiry officer. At the first, it appeared that Avalos' entry card had been taken from him and that he had gone back to Mexico. His whereabouts was unknown.

At the hearing Martin's story was quite different from the facts as found by the hearing officer. In essence, he claimed that his trips were innocent, that Avalos asked to ride back with him, that he knew that Avalos had a valid border-crossing card, and that when he picked Avalos up, the latter had with him the other two aliens, who displayed similar cards, thus convincing him that he could lawfully bring them with him. The live testimony of one of the aliens, and an affidavit of the other, who had fled, were directly to the contrary. As to the testimony of the alien Mendoza,

the hearing officer concluded: "From my observation of witness Mendoza and the manner of his testifying . . . I found him to be a credible witness." This finding of credibility should not be disturbed. Espinoza Ojeda v. I&NS, *supra*, 419 F.2d at 186–187. As to Martin's story, the hearing officer stated: "I cannot find that the testimony of [Martin-Mendoza] is credible." This finding of lack of credibility should also be left undisturbed.

■ Martin, however, says that Avalos, if he could be found, would corroborate his story. He claimed, and now claims, that the I&NS had a duty to find Avalos, and that its efforts were insufficient. On appeal, the Board of Immigration Appeals remanded. Contrary to the assertions of Martin's counsel, it said nothing about a need to make further efforts to find Avalos, but it did require "that every attempt should be made to find and present the statement which the witness Flemming claims was made by Avalos on November 27, 1966; and that both parties should be given the opportunity to present such further evidence as they may desire, which is relevant to the proceedings herein; and that the special inquiry officer's decision be made on the basis of the record as it stands at the completion of such reopened proceedings."

After the remand, the I&NS did attempt to find Avalos. The border-crossing card taken from Avalos gave two addresses, one in Tijuana and one (his birthplace and the home of his father) in Villa Victoria, Michoacan, some 250 miles from Mexico City. Investigations in both places turned up nothing. No one was found who even knew Avalos, much less where he was. Martin seizes on a suggestion from an I&NS investigator who had been checking at Villa Victoria that a photograph of Avalos "would be most helpful." Whether one was sent does not appear, nor does it appear whether the I&NS had one. Martin claims that it did, and that the photograph was not sent to the investigator. Assuming that Martin is right, we do

not think that failure to use this technique in trying to find Avalos is fatal. At the remand hearing, the hearing officer found that "I am satisfied that the Immigration Service has made a conscientious effort to locate Jose Jorge Avalos-Magallon and that Mr. Avalos cannot be located." The Board of Immigration Appeals, on a second appeal, came to a similar conclusion: "There is evidence which establishes to our satisfaction that the Service has made a concerted effort to locate Avalos-Magallon in Mexico without success." The record supports these findings. The expertise of the I&NS in assessing the difficulties of apprehending persons in a foreign country should not be lightly dismissed. See Tejeda v. I&NS *supra*, 346 F.2d at 391.

There is no evidence that the I&NS got rid of Avalos to prevent his being interviewed or called as a witness. The only evidence as to any statement by Avalos is in the report of his arrest, which was located and produced at the second hearing. Avalos told the arresting officer that he was going to Los Angeles to find work, that Martin knew it, and that Avalos was to pay Martin $10.-00 for taking him there. This is hardly evidence favorable to Martin, and it is no basis for a claim that the I&NS intentionally got rid of a potentially adverse witness.

The only evidence in support of Martin's claim that Avalos would be a favorable witness is Martin's story of what happened. It is considerably weakened by his testimony that he did not really know Avalos, that he had only met him twice, both times accidentally in Tijuana, once at a feria and the second time on the day of the arrest. He admitted that he had no idea where Avalos was, and that he knew no one who knew Avalos.

 The foregoing is much too thin a reed to support a claim that Martin was deprived of due process. This is not a criminal case, to which the Sixth Amendment applies, as is United States v. Mendez-Rodriguez, 9 Cir., 1971, 450

F.2d 1. See Lavoie v. I&NS, 9 Cir., 1969. 418 F.2d 732, 734.

2. *Use of the affidavit of Lopez-Mendez.*

Lopez was one of the two aliens found in Martin's car. He gave a sworn statement to an I&NS agent. The I&NS endeavored to keep him in this country by "farming him out" (see United States v. Verduzco-Macias, 9 Cir., 1972, 463 F.2d 105; United States v. Tsutagawa, 9 Cir., 1974, 500 F.2d 420 (1974)), but he fled and could not be found.

At the first hearing, Lopez's statement was identified by the agent, who also testified that Lopez made the statements. These corroborated the statements of the other alien, Mendoza, who testified and was cross-examined at length. Martin's counsel refers to the statement as unsigned, but the copy in the record shows a signature.

██ Use of this statement or affidavit does not require a reversal. Hearsay is admissible in administrative proceedings, which need not strictly follow conventional evidence rules. See Marlowe v. I&NS, 9 Cir., 1972, 457 F.2d 1314; Navarrette-Navarrette v. Landon, 9 Cir., 1955, 223 F.2d 234, 237. The tests for admissibility are fundamental fairness and probativeness. *Marlowe, supra.* Both tests are satisfied here: Lopez-Mendez swore to the statement, it was verified as being his statement, and he was unavailable as a witness because he had fled. It was obviously probative. Under Rule 804(a)(5) and (b)(4) of the Proposed Rules of Evidence for the United States Courts and Magistrates, it would probably be admissible in a trial in court.

Moreover, the hearing officer knew how to evaluate it. He said:

The sworn statement of Jose Lopez-Mendez is also entitled to some consideration, although its weight is necessarily impaired by the fact that the affiant could not be presented for cross-examination and, therefore,

there has been no opportunity to determine his credibility.

3. *The question whether there was an "entry" by Martin into the United States.*

 Martin relies upon Rosenberg v. Fleuti, 1963, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000, to support his claim that there was never an "entry" within the meaning of the statute which would subject him to exclusion. In that case, however, the Court said that "if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." (At 462, 83 S.Ct. at 1812.) The evidence shows that Martin went three times to Tijuana for just such a purpose.

4. *Denial of appointed counsel.*

Martin claims that he was deprived of due process because, during part of the hearings conducted after remand by the Board of Immigration Appeals, he was without counsel and was indigent. To this there are two answers.

1. We have repeatedly held that a respondent at a deportation hearing is not entitled to counsel at the government's expense. Dunn-Marin v. I&NS, 9 Cir., 1970, 426 F.2d 894, 895, and cases cited.

2. At nearly every stage of the proceedings against him, Martin had counsel—at the first hearing, on his appeal to the Board, at the only part of the hearing on remand at which substantial evidence was received, on his second appeal to the Board, and in this court. Lack of counsel at the one brief session at which some evidence as to the inability of the I&NS to find Avalos was received, and the examiner briefly questioned Martin as to his acquaintance with Avalos, does not support a claim of lack of due process. See Villanueva-Jurado v. I&NS, 5 Cir., 1973, 482 F.2d 886, 888; Henriques v. I&NS, 2 Cir., 1972, 465 F.2d 119, 120–121.

Before us, counsel claims prejudice in two respects. First, he asserts that he would have followed up on what was done in response to the request of the investigator who was looking for Avalos for a photograph. For the purpose of this decision, we assume that there was no response. Second, he asserts that he would have objected to the questions put to Martin as prosecutorial in style and leading. Neither objection would have been good.

The order of deportation is affirmed.