Petition of Edmond K. PALATIAN,
Petitioner-Appellee,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent-
Appellant.

No. 73–2846.

United States Court of Appeals,
Ninth Circuit.

Aug. 30, 1974.

Hufstedler, Circuit Judge, dissented and filed opinion.

Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Div., Los Angeles, Cal., for respondent-appellant.

Edmond K. Palatian, in pro per.

Before DUNIWAY, HUFSTEDLER and GOODWIN, Circuit Judges.

OPINION

DUNIWAY, Circuit Judge:

The Immigration and Naturalization Service appeals from an order which granted Palatian's petition for a writ of habeas corpus. We reverse.

The undisputed facts as found by the district court are as follows:

"Petitioner is a twenty-two year old Armenian who was born in Sofia, Bulgaria. At the age of sixteen, he entered the United States at New York City with his father, mother and brother after traveling first to Istambul and then to Beirut. He became a 'conditional entrant', and, on February 23, 1970, he was awarded 'permanent resident' status. He remains unmarried, with no dependents, and resides within the Central District of California.

On or about December 11, 1970, at the age of nineteen, he traveled to Tijuana, Mexico, where he stayed for two and one-half days. Upon his return at the port of entry, he was found to be in the possession of twenty-eight bricks of marijuana weighing

approximately fifty-five pounds. He was arrested, and convicted of failure to register and pay the tax on the narcotic under 26 U.S.C. § 4755(a)(1). He was sentenced to two-years' imprisonment. Petitioner never appealed this conviction in the Southern District of California.

On May 22, 1972, the Service brought exclusion proceedings, and the Special Inquiry Officer found him excludable under 8 U.S.C. 1182(a)(23). The appellate board upheld that decision. His administrative remedies are exhausted under 8 U.S.C. 1105(a) [1105a] (c)."

The decision of the district court turns on its view that, when Palatian returned to this country, he did not make an "entry" as that term is defined in 8 U.S.C. § 1101(a)(13) [1] and so is not excludable under 8 U.S.C. § 1182(a). Here are the district court's findings and conclusions on this point:

"The Court concludes that petitioner's intention at his departure from the United States on or about December 11, 1970 was not so disposed as to regard it to be meaningfully interruptive of his permanent residence status within this country. Rosenberg v. Fleuti, 374 U.S. 449 [83 S.Ct. 1804, 10 L.Ed.2d 1000] (1963). In arriving at this conclusion, the Court takes into consideration the length of his absence being only two and one-half days; the absence of any demonstration of criminal intent being formed prior to or during his departure from this country; and the failure to make arrangements for a stay of significant duration in a foreign state. The Court also takes into account the

additional factors of his youth, of the absence of a former criminal record, and of the absence of prior departures from this country, *Rosenberg, supra,* 374 U.S. at 462 [83 S.Ct. 1804]."

The district court rejected Palatian's claim that it was improper to order him sent to Bulgaria as the place "from whence he came." From this decision Palatian has not appealed. Nevertheless, in reaching its decision as to "entry," the district court appears to have relied upon the same facts, feeling that it would be an undue hardship to send Palatian back to Bulgaria, which he left more than six years ago, and where he would be subjected to the Bulgarian communist regime and thus deprived of the civil liberties which he has enjoyed in this country.

We do not read Rosenberg v. Fleuti, *supra,* as the district court reads it. There, the court held that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." Rosenberg v. Fleuti, *supra,* 374 U.S. at 462, 83 S.Ct. at 1812. The Court also held that "it effectuates congressional purpose to construe the intent exception to § 101(a)(13) as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Id.* One of the factors that the Court determined to be relevant to the inquiry as to whether a departure was a "meaningful" interruption was "the purpose of the visit, for if the purpose of leaving the country

[1]. 8 U.S.C. § 1101(a)(13) reads:

"(13) The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney Gener-

al that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception."

is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." *Id.* The Court also noted that "the operation of these and other possibly relevant factors remains to be developed 'by the gradual process of judicial inclusion and exclusion.' Davidson v. New Orleans, 96 U.S. 97, 104 [24 L.Ed. 616]." *Id.*

■ We hold that the interruption of Palatian's residence that occurred was "meaningful" within the principles of the *Fleuti* case. What Palatian did when he attempted to come back to this country from Mexico was an "[attempt] to accomplish some object which is itself contrary to some policy reflected in our immigration laws." Those laws provide for the exclusion or deportation of an alien who has been convicted of smuggling marijuana. 8 U.S.C. § 1182(a)(23), 8 U.S.C. § 1251(a)(11). This is a clear indication that the immigration laws reflect a general concern over the problem of drug control. See generally, Garcia-Gonzales v. I.&N.S., 9 Cir., 1965, 344 F.2d 804. Palatian's smuggling of marijuana was not a mere technical or insignificant violation; he was caught attempting to smuggle fifty-five pounds of marijuana into this country. Thus, Palatian's acts were contrary to both the letter of the immigration laws and to a policy expressed in those laws.

We cannot agree that the fact that Palatian did not decide to smuggle the marijuana until after he was in Mexico is controlling. The "purpose of the visit" referred to in *Fleuti, supra,* may have been innocent when it began, but it was not innocent when Palatian sought to re-enter this country. In short, we do not think that the language in *Fleuti, supra,* which refers to "an intent to depart" is or should be controlling. We cannot see any good reason why the *time* when the intent "to accomplish some purpose which is itself contrary to some policy reflected in our immigration laws" was first formed should be con-

trolling. The purpose, to smuggle marijuana into this country, is just as "meaningful' if formed first in Mexico as it would be if first formed before going to Mexico.

The district court relied upon Vargas-Banuelos v. I.&N.S., 5 Cir., 1972, 466 F.2d 1371; and Yanez-Jacquez v. I. &N.S., 5 Cir., 1971, 440 F.2d 701.

In *Yanez-Jacquez,* a resident alien went to Mexico for the purpose of attacking an enemy with an icepick. However, he could not find his intended victim and returned to this country. Obviously, he committed no offense at all, much less one that is contrary to a policy reflected in our immigration laws. The case is not in point.

*Vargas-Banuelos* is different. There, the resident alien went to Mexico and aided and abetted four Mexican aliens in entering this country illegally. The court held that, because the intent to do what the alien did was not formed until after he was in Mexico, there was not a meaningful interruption of his residency in this country. For reasons previously stated, we decline to follow this decision.

No other court has come to the same conclusion as the Fifth Circuit did in *Vargas-Banuelos.* We have not done so. In de Bilbao-Bastida v. I.&N.S., 9 Cir., 1969, 409 F.2d 820, 823, we did not inquire into the time when an alien, who went to Mexico and then to Cuba, decided to go to Cuba. We held that his going to Cuba in July 1961 was contrary to a policy then reflected in our immigration laws.

In Gamero v. I.&N.S., 9 Cir., 1966, 367 F.2d 123, 126–127, we held that an alien who had departed this country with the express intent to return within a few months had not "temporarily visited" Mexico within the meaning of 8 U.S.C. § 1181(b) when he returned seventeen years later. We held that the alien's intent upon departure was not dispositive of the question of whether or not he departed "temporarily."

Other circuits have not adopted the *Vargas-Banuelos* rationale. In Bufalino

v. I.&N.S., 3 Cir., 1973, 473 F.2d 728, 731, the Third Circuit held that an alien had meaningfully interrupted his residence when he knowingly made a false claim of United States citizenship upon his return to this country following trips to Bimini and Cuba. The court did not inquire into the time when the alien had formed the intent to contravene this immigration policy. The standards announced in *Fleuti* have been applied on numerous occasions by the Service[2] and by the courts,[3] yet in no case, except *Vargas-Banuelos*, has the decision been governed by the time when the alien formed the intent to accomplish an objective that was contrary to a policy reflected in the immigration laws.

To require that the intent be formed before or at the time of departure could, we think, produce anomalous and indeed irrational results. Thus if resident alien A left the country for the purpose of acquiring fifty-five pounds of marijuana and was caught with it in his possession upon his return, he would presumably be excludable, while Palatian, who went to Mexico for an innocent purpose but while there decided to import fifty-five pounds of marijuana into this country and was caught in the act at the border, would not be excludable. To us, at least, this is an irrational result.

Nor is the fact that Palatian may be sent back to Bulgaria a basis for a finding that he did not "enter" this country when he returned from Mexico. However much we may sympathize with his plight, the fact is that he foolishly brought it upon himself. "Although we sympathize with petitioner's unfortunate position, we are compelled to·uphold the decision of the [Service]. Unfortunately for petitioner, we do not act as a court of equity." Barragan-Sanchez v. Rosenberg, 9 Cir., 1972, 471 F.2d 758, 760.

The order appealed from is reversed.

HUFSTEDLER, Circuit Judge (dissenting):

I adopt the following portion of Judge Lucas' memorandum opinion as my own:

"[P]etitioner's intention at his departure from the United States on or about December 11, 1970, was not so disposed as to regard it to be meaningfully interruptive of his permanent residence status within this country. Rosenberg v. Fleuti, 374 U.S. 449 [83 S.Ct. 1804, 10 L.Ed.2d 1000] (1963). In arriving at this conclusion, [I] take into consideration the length of his absence being only two and one-half days; the absence of any demonstration of criminal intent being formed prior to or during his departure from this country; and the failure to make arrangements for a stay of significant duration in a foreign state. [I] also take into account the additional

---

2. See Matter of Valdovinos, ID 2228, BIA, September 11, 1973; Matter of Janati-Ataie, ID 2170, AG, October 26, 1972; Gordon & Rosenfield, Immigration Law and Procedure, § 4.6c at 4-31-4-34.

3. See, e. g., Martin-Mendoza v. I.&N.S., 9 Cir., 1974, 499 F.2d 918, 921 (finding an entry where the alien departed for the purpose of arranging to facilitate the illegal entry of aliens into the United States); Barragan-Sanchez v. Rosenberg, 9 Cir., 1972, 471 F.2d 758, 759 (finding that residence was not "continuous" under 8 U.S.C. § 1254(a)(1) when the alien was forced to depart under threat of deportation); Toon-Ming Wong v. I.&N.S., 9 Cir., 1966, 363 F.2d 234, 236 (holding that the issue of continuous presence under *Fleuti* and 8 U.S.C. § 1254(a)(1) was not determined solely by looking at the length of visit); Git Foo Wong v. I.&N.S., 9

Cir., 1966, 358 F.2d 151, 153 (holding that an innocent visit to Mexico for two hours should not be regarded as meaningfully interruptive of continuous presence in the United States under 8 U.S.C. § 1254(a)(1)); Wadman v. I.&N.S., 9 Cir., 1964, 329 F.2d 812 (holding that the *Fleuti* standard applied to 8 U.S.C. § 1254(a)(1) and remanding for a determination of whether a five-day vacation meaningfully interrupted continuous presence); Itzcovitz v. Selective Service Local Board No. 6 N.Y., N.Y., 2 Cir., 1971, 447 F.2d 888, 893-894 (holding that a three-week trip to attend a training course, required by an employer is not a meaningful interruption under *Fleuti* and would not result in an entry under 8 U.S.C. § 1101(a)(13)); Zimmerman v. Lehmann, 7 Cir., 1965, 339 F.2d 943, 949 (holding no entry within 8 U.S.C. § 1101(a)(13) after either of two short trips to Canada).

factors of his youth, of the absence of a former criminal record, and of the absence of prior departures from this country. *Rosenberg, supra,* 374 U.S. at 462 [83 S.Ct. 1804].

"Furthermore, [I] find persuasive supplementary authority for [the] decision in the Fifth Circuit. Petitioner's position is at least as viable as the petitioner's in Yanez-Jacquez v. Immigration and Naturalization Service, 440 F. 2d 701 (5th Cir. 1971). In that case, the Fifth Circuit recognized the clear formation of a criminal intent *prior to* the departure in question. And yet it did not deem that to be the controlling factor. *Yanez-Jacquez, supra,* 440 F.2d at 704. There simply was no indication that Yanez intended his trip to be an interruption of his status as a permanent resident alien of the United States. A fortiori, petitioner similarly demonstrated no indication of an intention to renounce the privileges of his permanent alien resident status in the United States. The Fifth Circuit extended *Yanez-Jacquez* in Vargas-Banuelos v. Immigration & Naturalization Service, 466 F.2d 1371 (5th Cir. 1972). The formation of the criminal intent on the part of the petitioner (a forty-one year old man) also took place while abroad in Mexico; however, the total circumstances for granting the petition in that case seemed far less compelling than in the instant case. The point was made by the Fifth Circuit in that case that the petitioner had been duly tried, convicted, and punished by a federal court for his misdeeds, and the further sanction of deportation with its attendant hardships, personal and familial, should be deemed to be excessive unless clearly authorized by statute. *Vargas-Banuelos, supra,* 466 F.2d at 1374. It is certainly not insignificant in this case that the additional sanction of deportation here would result not only in the deprivation of familial residence in the United States, but also in the deprivation of individual liberties in a democratic society. Petitioner's home of deportation would be communist Bulgaria. Such a harsh sanction delivered to one initially wedded to this country by the democratic ideal should not be so summarily accomplished in the absence of a clear congressional mandate, or, in the very least, in the absence of more precise and flexible guidelines which may be administratively tailored to the individual peculiarities of each case. Insofar as the Service failed to consider all of the above factors, or considering them, dismissed their weight summarily, it is deemed to be contrary to the implied instruction of Congress to treat the acceptance and exclusion of aliens under circumstances attentive to the individual characteristics of each case, and not in a fashion merely consequential to the application of a broad statutory standard. Viewed under the total circumstances available for consideration, and mindful of the principles developed by the Supreme Court and the Fifth Circuit, [I am] not willing to lend that 'hard and fast' construction to or application of the statute's prima facie language to the facts such that in this case it can be deemed that petitioner's departure from this country was a meaningful one under the statute. *See generally* Wadman v. Immigration and Naturalization Service, 329 F.2d 812, 816 (9th Cir. 1964). The mere interruption of petitioner's permanent residence, however the Service may have construed it, is simply not in balance with the consequences which will be levied upon him as a result. Accordingly, [I] can only conclude that Congress did not intend those consequences to be within the purpose of the Act under the circumstances of this particular case."

I would affirm.