Maria Antonieta PLASENCIA,
Petitioner–Appellee,

v.

Joseph SURECK, District Director of the Immigration and Naturalization Service, Respondent–Appellant.

No. 78–2641.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1980.

Decided Nov. 7, 1980.

Denis W. Campbell, Los Angeles, Cal., for respondent–appellant.

C. William Kircher, Jr., Asst. U. S. Atty., Los Angeles, Cal., for petitioner–appellee.

Before WALLACE and SCHROEDER, Circuit Judges and CORDOVA *, District Judge.

SCHROEDER, Circuit Judge:

In this appeal we must decide whether the Immigration & Naturalization Service (INS) may determine, at the border, in summary exclusion proceedings, whether a lawfully admitted permanent resident alien may return to the United States after a brief visit abroad. The district court held that the INS could proceed against such an alien only in deportation proceedings. We agree and affirm.

Appellant, Maria Plasencia, is a citizen of El Salvador and since 1970 has been a permanent resident alien in the United States. In 1975, returning from a brief visit to Mexico, she was arrested at the border and charged with attempting to smuggle six aliens into the country. She declined to obtain counsel. The next day exclusion proceedings were commenced at the border and she was ordered excluded from the United States pursuant to INA § 212(a)(31), 8 U.S.C. § 1182(a)(31), which makes the smuggling of aliens for gain an excludable offense. In those proceedings Plasencia had the burden of proving that she was entitled to enter the country. INA § 291, 8 U.S.C. § 1361. The Immigration Judge regarded it appropriate in the exclusion proceedings to determine whether Plasencia's visit to Mexico was "a meaningful departure from the United States within the meaning of *Rosenberg v. Fleuti*," 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). He found that she was guilty of smuggling aliens and that she was subject to exclusion proceedings.

After unsuccessfully seeking review within the INS, Plasencia brought a habeas corpus action in district court. The district court vacated the decision of the Board of Immigration Appeals affirming the order of exclusion and remanded the action to the INS with instructions to proceed against Plasencia, if at all, only in deportation proceedings.

■ The distinction between exclusion proceedings and deportation proceedings is central to our immigration law. Aliens seeking to enter the United States must establish their admissibility in exclusion proceedings, generally held at the border or port of entry. Those aliens already in the United States may be expelled only when the Service can carry its burden in deportation proceedings that the alien is deportable. Deportation proceedings are generally held near the alien's home and are subject to much more stringent procedural safeguards than exclusion proceedings. *See Maldonado–Sandoval v. INS*, 518 F.2d 278, 280 n.3 (9th Cir.1975).

■ An alien is excludable only if his coming into the United States is an "entry" as that term is defined in INA § 101(a)(13), 8 U.S.C. § 1101(a)(13). *Maldonado–Sandoval v. INS, supra*, at 280. If the alien is a permanent resident who is returning to the United States after a journey abroad, the Supreme Court has held that the return amounts to an "entry" only if the trip was "meaningfully interruptive" of his residence in America. *Rosenberg v. Fleuti, supra*, 374 U.S. at 462, 83 S.Ct. at 1812, 10 L.Ed.2d at 1008. The Court listed several factors which are relevant to whether a given departure is a meaningful interruption, including the length of the absence, the purpose of the trip, and whether the alien had to obtain special travel documents. The Court also said that "if the purpose of leaving the country is to accomplish some object which is itself contrary to

---

* Honorable Valdemar A. Cordova, United States District Judge for the District of Arizona, sitting by designation.

some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." *Id.*

The Service relies on *Fleuti* to argue, with some circularity, that since the Immigration Judge found that Plasencia was attempting to smuggle aliens for gain, and since this is an "object which is itself contrary to some policy reflected in our immigration laws," she made an "entry" in 1975 and is therefore subject to exclusion proceedings. This misconstrues *Fleuti.* The issue here is whether Plasencia was entitled to have her violation of the immigration laws and the purpose of her trip determined in deportation rather than exclusion proceedings. That issue was not presented in *Fleuti.*

*Fleuti* was a deportation case. The issue was whether the alien, who had been admitted to permanent residence in 1952, had made an "entry" in 1956 when he returned from a brief visit abroad. If he had, then he was arguably deportable under INA § 241(a)(1), 8 U.S.C. § 1251(a)(1), as excludable at the time of his 1956 "entry." The Court held that he had not made an "entry" and, hence, was not deportable on that ground.[1]

The Court neither held nor implied that the question of Fleuti's "entry" in 1956 could have been decided in exclusion proceedings. In fact, an earlier case, cited with approval in *Fleuti,* strongly supports the view that even if a permanent resident alien does make an "entry" after a brief visit abroad, he still cannot be subject to exclusion proceedings.

In *Kwong Hai Chew v. Colding,* 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953), a permanent resident alien left the United States for four months to work on a ship. On his return he was excluded under a regulation which permitted exclusion without a hearing under certain circumstances.

The Court found it unnecessary to decide whether the alien had made an "entry" or whether his journey abroad could have any effect on his ultimate right to remain in the United States. It reversed on the ground that he could not be excluded without the procedural due process to which he would have been entitled had he never left the country. On remand the District of Columbia Circuit held that this meant that he was at least entitled to a hearing at which the government was the moving party and had the burden of proof, requirements which are not satisfied by exclusion proceedings. *Kwong Hai Chew v. Rogers,* 257 F.2d 606 (D.C.Cir.1958).

This Circuit's decision in *Maldonado–Sandoval v. INS, supra,* stands for the same principle established in *Kwong Hai Chew*: a permanent resident alien does not lose the procedural protection to which he is otherwise entitled simply by making a brief journey abroad. We held in *Maldonado–Sandoval v. INS, supra,* that a permanent resident alien returning from a brief trip to Mexico was not subject to exclusion proceedings:

> When evidence appears, during an exclusion proceeding, that the alien has been theretofore granted resident status and is seeking to return to the United States after a brief visit outside the United States, the exclusion proceeding shall be terminated.

518 F.2d at 281.

In *Maldonado–Sandoval v. INS, supra,* the disputed factual question was whether the alien had obtained his original visa by fraud. The Service argues that *Maldonado–Sandoval* should be distinguished because here the alien was unquestionably admitted on the basis of a valid visa but may have violated the immigration laws during the absence. No such distinction was made in *Kwong Hai Chew.* Important to our decision in *Maldonado–Sandoval* was

---

1. INA § 241(a)(1), 8 U.S.C. § 1251(a)(1) provides:

  (a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

  (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry. . . .

the manifest unfairness of permitting the Service to use exclusion proceedings to circumvent the deportation proceeding requirements simply because the alien made a brief journey out of the country. *Maldonado–Sandoval v. INS, supra,* at 280 & n.3. The same unfairness is present in this case and the result should also be the same.

Finally, the Service argues that *Palatian v. INS,* 502 F.2d 1091 (9th Cir.1974), permits the Service to decide the question of "entry" of a returning permanent resident in exclusion proceedings. *Palatian* was unlike this case. There the alien returned from a brief trip to Mexico with fifty–five pounds of marijuana. He was then prosecuted and sentenced for importing the drug. It was only after the alien had been prosecuted for the marijuana smuggling and had served most of his sentence that exclusion proceedings were commenced. Whether Palatian had smuggled marijuana had been fully litigated in a criminal proceeding in which he enjoyed the full panoply of procedural rights. Unlike Plasencia, Palatian was not prejudiced by exclusion rather than deportation proceedings, and, in fact, he did not ever complain of the Service's use of exclusion proceedings. The issue in the case was simply whether, as a matter of law the undisputed smuggling was or was not an "entry" within the meaning of *Fleuti. Palatian,* therefore, does not control this case where the disputed factual basis for the alien's exclusion was improperly litigated in exclusion proceedings and where the prejudice to the alien in being denied the procedural safeguards of deportation proceedings is manifest.

The Service should not be unduly burdened by our holding today. Our decision applies only to cases in which a permanent resident alien is returning from a visit abroad and the question is whether the visit was "meaningfully interruptive" of the alien's American residence. In such cases the issues of "entry" and excludability must be litigated in deportation proceedings. If the Service can carry its burden of showing that the alien made an "entry" and was excludable at the time of the "entry," then, of course, the alien is deportable pursuant to INA § 241(a)(1), 8 U.S.C. § 1251(a)(1). Indeed, the Service has used deportation procedures in such "entry" cases. *E. g., Fleuti v. Rosenberg, supra; Martin–Mendoza v. INS,* 499 F.2d 918 (9th Cir.1974), *cert. denied,* 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975). We simply hold that they are mandatory.

Affirmed.

WALLACE, Circuit Judge, dissenting:

Although I am sympathetic with Plasencia's plight, the cases that bind us require me to dissent. The law simply does not provide for the full panoply of procedural rights which the majority concludes are required.

If Plasencia "entered" the United States with an intent to accomplish an object which is contrary to some policy in the immigration laws, the district court must be reversed. The Supreme Court in *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), held that a resident alien, who has left our country, does not "enter" the United States if he or she did not intend "to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Id.* at 462, 83 S.Ct. at 1812. The Court stated that one factor relevant to the determination of that intent "is the purpose of the visit, for if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful." *Id.*

Thus, the focus of our attention is whether Plasencia's purpose in leaving the United States was to do something in violation of our immigration laws. She was found to have done so. The majority contends that such a finding can be made only in a deportation proceeding. This conclusion can be reached only by a misreading of the case that is most directly in point, *Palatian v. INS,* 502 F.2d 1091 (9th Cir.1974). The

majority states that *Palatian* was unlike the instant case because the alien in *Palatian* had been excluded after his conviction for importing marijuana. He had, therefore, received a full criminal proceeding "in which he enjoyed the full panoply of procedural rights." In *Palatian*, however, we were not concerned with whether the defendant's criminal trial had afforded him adequate procedural safeguards. Rather, we were concerned with whether there had been a "meaningful interruption" as required by the Supreme Court in *Rosenberg v. Fleuti, supra,* 374 U.S. at 462, 83 S.Ct. at 1812. *Palatian* focused on the language in *Fleuti,* quoted above, to find that a meaningful interruption of Palatian's residence had occurred. We further stated:

> What Palatian did when he attempted to come back to this country from Mexico was an "[attempt] to accomplish some object which is itself contrary to some policy reflected in our immigration laws." These laws provide for the exclusion or deportation of an alien who has been convicted of smuggling marijuana. 8 U.S.C. § 1182(a)(23), 8 U.S.C. § 1251(a)(11). This is a clear indication that the immigration laws reflect a general concern over the problem of drug control.

502 F.2d at 1093.

The majority goes astray by attempting to distinguish *Palatian* on the basis that there was no full trial provided to Plasencia as was provided to Palatian. The majority overlooks the difference between the statutes involved in the two cases. The statute in *Palatian* was 8 U.S.C. § 1182(a)(23), which provides for the exclusion of "[a]ny alien who has been *convicted* of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana ..." (emphasis added). Pursuant to this statute, we found that Palatian had an intent to accomplish an object which was contrary to a policy reflected in the immigration laws, and therefore, even if Palatian formed this intent after departing from the United States, a "meaningful interruption" of his residence had occurred.

The statute under which Palatian was excluded, however, required a conviction. 502 F.2d at 1093.

In contrast, the statute in the instant case is 8 U.S.C. § 1182(a)(31), which provides for the exclusion of "[a]ny alien who at any time shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of the law." This statute simply does not require a conviction for exclusion, as does the drug possession statute. 1 Gordon & Rosenfield, Immigration Law and Procedure § 2.46 (1980). When Plasencia returned to this country, she attempted to accomplish an object that was contrary to a policy reflected in our immigration laws. By statute, no conviction was required. Therefore, like Palatian, a "meaningful interruption" of Plasencia's residence had occurred.

The majority relies on *Maldonado–Sandoval v. INS,* 518 F.2d 278 (9th Cir.1975) (per curiam), for the proposition that a permanent resident alien does not lose the procedural protection to which he or she is otherwise entitled simply by making a brief journey abroad. That case, however, is distinguishable from *Palatian* and the instant case because the alien in *Maldonado–Sandoval* was not engaged in any illegal activity when he attempted to reenter the United States. In *Maldonado–Sandoval,* we held that the resident alien's two or three day trip to Mexico was an " 'innocent, casual, and brief excursion,' " and "did not manifest 'an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence.' " *Id.* at 281, *quoting Rosenberg v. Fleuti, supra,* 374 U.S. at 462, 83 S.Ct. at 1812. In *Palatian* and in the instant case, on the other hand, there was no "innocent, casual, and brief excursion." The excursions in both cases were for illegal purposes, and were meaningfully interruptive of the aliens' permanent residences.

Congress has made a determination that certain procedural safeguards that are necessary prior to the exclusion of an alien

based upon drug smuggling are not necessary prior to the exclusion of an alien based upon smuggling of illegal aliens. The former requires a criminal conviction; the latter does not. Even though the statutes provide for a seemingly disparate treatment, "Congress unquestionably has the power to exclude all classes of undesirable aliens from this country, and the courts are charged with enforcing such exclusion when Congress has directed it . . . ." *Rosenberg v. Fleuti, supra*, 374 U.S. at 461, 83 S.Ct. at 1811. We do not have the right or power to interpolate procedural requirements from one statute to another. Plasencia's attempt to smuggle illegal aliens across the border made her departure from the United States meaningfully interruptive of her permanent residence. She was thus subject to exclusion on her attempt to enter the country. I conclude that the district court's holding that the Immigration and Naturalization Service could proceed against such an alien only in a deportation proceeding is incorrect, and, therefore, I would reverse.