Louisa EDMOND, et al.

v.

Alan NELSON, Commissioner, Immigration and Naturalization Service, et al.

Civ. A. No. 82–5973.

United States District Court,
E.D. Louisiana.

Oct. 27, 1983.

Daniel Frazier, New Orleans, La., for plaintiffs.

Charles E. Hamilton, III, Washington, D.C., for defendants.

## OPINION

ROBERT F. COLLINS, District Judge.

### I. INTRODUCTION

This petition for review of a Board of Immigration Appeals' order presents three

major questions: whether petitioners had effected an entry into the United States and, therefore, were improperly subjected to exclusion hearings; whether denial of petitioners' motion to undertake discovery of person(s) responsible for rendering an advisory opinion on the application of asylum at the Bureau of Human Rights and Humanitarian Affairs of the Department of State resulted in petitioners being denied a full and fair hearing; and whether petitioners have met their burden of establishing that they qualify for asylum under the Immigration and Naturalization Act (hereinafter the Act), 8 U.S.C. § 1101(a)(42)(A), for withholding of exclusion under the Act, 8 U.S.C. § 1253(h).

### II. STATEMENT OF THE FACTS

The petitioners in this action, all natives and citizens of Haiti, are Louisa Edmond (age 24; Edmond *fille* A.R. 278);[1] Louisamond Edmond (age 52; Edmond *pere* A.R. 98, 261); Germaine Lumaine (age 33; G. Lumaine A.R. 193); Iranese Lumaine (age 25; I. Lumaine A.R. 201); Frank Verne (age 30; Verne A.R. 327, 329); Marie LaGuerre (age 24; LaGuerre A.R. 218); Odette Baptiste (age 31; Baptiste A.R. 88); and Lomaine Fidogene (age 17; Fidogene A.R. 26, 173). They, along with seventeen other Haitians, departed from Haiti by boat in late June, 1981. Their destination was Miami, Florida. (G. Lumaine A.R. 132–136, 194, 208). After accidental landings in Cuba and Grand Cayman where they obtained provisions and repairs, the petitioners were later picked up in the Caribbean by the crew of the M/T AMOCO VOYAGER and brought to the port of New Orleans on July 17, 1981. (G. Lumaine A.R. 137–138, 205–208).[2]

While on the M/T AMOCO VOYAGER, the petitioners were locked in the infirmary and kept under guard the entire time.

---

**1.** The initials "A.R." designate the Administrative Record, and, as there are eight, each is identified by the surname of the petitioner, or in two instances, by an initial and surname: G. Lumaine A.R.; I. Lumaine A.R. Louisamond Edmond's A.R. is distinguished from his daughter's by the designation "Edmond *pere* A.R."

**2.** The petitioners will be listed throughout this Opinion in the chronological order of their second hearings before the immigration judge, and not the order they appear in the style of the petition.

Upon arrival at New Orleans, the ship's master notified the Immigration and Naturalization Service (hereinafter the INS), which immediately dispatched officers to the ship. All twenty-five aliens, including these petitioners, were inspected on board and immediately removed by the INS officers. (LaGuerre A.R. 145–146; G. Lumaine A.R. 41–42, 66). Since they had no entry documents, the petitioners were immediately detained. (G. Lumaine A.R. 229).

The petitioners filed applications for admission to the United States and later for asylum in the United States or, concomitantly for withholding of deportation to Haiti under the provisions of § 208(a) [3] and § 243(h)(1) [4] of the Act, 8 U.S.C. § 1158(a) and 8 U.S.C. § 1253(h)(1). (A.R. 31). Shortly after the M/T AMOCO VOYAGER docked, on September 3, 1981, these applications were denied by INS's District Director at New Orleans. (G. Lumaine A.R. 238). Exclusion hearings for the petitioners, held between October 16 and October 20, 1981, resulted in final orders of exclusion and deportation as well as denial of all the asylum applications. (G. Lumaine A.R. 699; Verne A.R. 679); Edmond *fille* A.R. 751; Edmond *pere* A.R. 848; I. Lumaine A.R. 697; LaGuerre A.R. 823; Baptiste A.R. 680; Fidogene A.R. 547).

Petitioners brought an action for declaratory and injunctive relief in this Court on October 20, 1981. This action was dismissed on October 28, 1981. (G. Lumaine A.R. 659). Appeals from the orders of exclusion and deportation were returned by the Board of Immigration Appeals (hereinafter BIA) for lack of jurisdiction on January 20, 1982. (G. Lumaine A.R. 697).

On January 28, 1982, petitioners filed a petition for review in the United States

Court of Appeals for the Fifth Circuit. This was dismissed without prejudice on February 16, 1982. (G. Lumaine A.R. 656, 668).

Motions to reopen the exclusion proceedings to have the previously denied asylum applications reconsidered, filed on or about February 3, 1982, were denied by the immigration judge on February 16, 1982. (G. Lumaine A.R. 680, 682). Upon a second appeal to the BIA, the proceedings were reopened and remanded on March 5, 1982. (G. Lumaine A.R. 678).

Reopened exclusion hearings, held before a different immigration judge, resulted in the denial of petitioners' asylum applications and in the rendering of final orders of exclusion and deportation, pursuant to § 236(a) of the Act, 8 U.S.C. § 1226(a). These orders, dated June 15, 1982, were issued by an immigration judge after evidentiary hearings held during late March and early April, 1982. Each order was affirmed on November 18, 1982 by the BIA pursuant to § 236(b) of the Act, 8 U.S.C. § 1226(b). All eight petitioners, by this habeas corpus proceeding, now jointly seek judicial review of these orders of exclusion and deportation under § 106(b) of the Act, 8 U.S.C. § 1105a(b).

## III. DISCUSSION

### A. *Exclusion Hearing*

■ The petitioners allege that they had gained "entry" into the United States and, therefore, were improperly subjected to an exclusion hearing. The Court does not agree. In reaching this conclusion, the Court finds that the petitioners never effected an entry into the United States.

---

**3.** Section 208(a) provides that:
[t]he *Attorney General shall establish a proce-dure for an alien physically present in the Unit-ed States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of Section 101(a)(42)(A).*

**4.** Section 243(h)(1) provides that:
[t]he *Attorney General shall not deport or re-turn any alien ... to a country if the Attorney General determines that such alien's life or free-dom would be threatened in such country on account of race, religion, nationality, member-ship in a particular social group, or political opinion.*

"Entry" into the United States under the Act means "any coming of an alien into the United States, from a foreign port or place ... whether voluntary or otherwise ...." 8 U.S.C. § 1101(a)(13). In *In re Phelisna*, 551 F.Supp. 960, 962 (E.D.N.Y.1982), the Court held that:

[q]uite patently the statute cannot be read to mean that mere presence in the United States is enough to show an entry. The inspection stations at which the United States determines whether aliens are admissible are per force [sic] inside the nation's borders. Congress could not have meant that an alien had come "into" the United States when he arrived at one of the usual points where the government is prepared to process applications for admission.

All eight of the alien petitioners claim to have effected entry into the United States because they entered United States waters aboard the M/T AMOCO VOYAGER and proceeded to the port of New Orleans. However, while aboard the M/T AMOCO VOYAGER, petitioners were, at all times, under lock and key detention by the ship's master. When the ship docked in New Orleans, the petitioners were turned over to INS's inspection officials. Quite simply, this is not entry for immigration law purposes.

In addition to the "... any coming ..." standard quoted above from the statute, "entry" also means "... freedom from governmental restraint, not merely going ashore or crossing the border ...." *Klapholz v. Espérdy*, 201 F.Supp. 294, 297 (S.D.N.Y.1961), *aff'd*, 302 F.2d 928 (2d Cir.), *cert. denied*, 371 U.S. 891, 83 S.Ct. 183, 9 L.Ed.2d 124 (1962). *See also Leng May Ma v. Barber*, 357 U.S. 185, 188, 78 S.Ct. 1072, 1074, 2 L.Ed.2d 1246 (1958), where the Supreme Court held that:

[f]or over a half century, this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States.

Clearly, the petitioners were under restraint when they arrived in the United States. (*See, e.g.* LaGuerre A.R. 145–146). Petitioners were placed under lock and key because the immigration laws require it. It can be presumed from his actions that the ship's master knew the law and was determined to obey it. Because the law requires the ship's master to detain aliens under circumstances like those here, his detention of these aliens does not differ from "governmental restraint" or "custody." Specifically, Section 271(a) of the Act states that:

[i]t shall be the duty of every person, including the owners, masters, officers, and agents of vessels ... bringing an alien to, or providing a means for an alien to come to, the United States ... *to prevent the landing of such alien* in the United States at a port of entry other than as designated by the Attorney General .... [Emphasis supplied.]

8 U.S.C. § 1321(a). The Act then provides that, "all aliens arriving at ports in the United States shall be examined by one or more immigration officers ...." 8 U.S.C. § 1225(a). The purpose of this inspection and any hearings pursuant thereto is to determine whether the inspected alien is excludable. *Ibid.* Failure of the alien to present himself "at the time and place designated by the immigration officers shall be prima facie evidence" that the persons designated in Section 271(a), *supra*, of the Act have violated that Section. 8 U.S.C. § 1321(b). Such violation can impose a liability of $1,000 per violation—up to $25,000 in this instance—enforceable, among other ways, by a lien against the vessel which may be "libeled therefor." 8 U.S.C. § 1321(a).

While the petitioners were not under "official restraint," in that they were not under arrest or in the custody of the INS, it is clear that they were under a restraint required by the statute that governs entry of aliens, a statute that contemplates that law-abiding ship's masters will act as did this ship's master. For this reason, entry was never effected.

In making its determination as to the "entry" issue, the Court notes that it is merely affirming the decision of the BIA below. Petitioners maintain that they were never afforded an opportunity to be heard on the "entry" issue. The Court finds that this is not correct. The petitioners had a hearing at which they presented evidence, much of which related to the question of whether entry was effected. The transcripts of the immigration judge's proceedings below are replete with questions by the petitioners' counsel, the immigration judge, and the INS attorney, together with answers that relate to the question of entry. (See, *e.g.*, G. Lumaine A.R. 87–227, *passim;* Verne A.R. 63–317, *passim;* Edmond *fille* A.R. 63–268, *passim;* Edmond *pere* A.R. 60–250, *passim;* I. Lumaine A.R. 75–196, *passim;* LaGuerre A.R. 92–203, *passim;* Baptiste A.R. 82–249, *passim;* and Fidogene A.R. 60–161 *passim.*)

 Because entry into the United States was never made, the exclusion hearings were appropriate. Admissibility into the United States should be determined in an exclusion hearing. *Landon v. Plasencia,* — U.S. —, —, 103 S.Ct. 321, 326–28, 74 L.Ed.2d 21, *reversing* 637 F.2d 1286 (2nd Cir.1982). It is also proper to proceed in an exclusion—as opposed to deportation—proceeding to determine whether an alien was trying to enter or whether that alien is excludable. *Ibid.*

An alien is excludable under § 212(a)(20) of the Act, which states in part:

... the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(20) ... any immigrant who at time of application for admission is not in possession of ... a valid entry document required by this Act ....

8 U.S.C. § 1182(a)(20). In the present case, it is uncontested that none of the petitioners had "a valid entry document" and were all thereby subject to exclusion because they had not yet achieved entry or "admission" into the United States. In sum, the Court finds that petitioners were afforded an adequate opportunity to be heard on this issue and concludes that the BIA was correct in its finding that entry had not been affected.

### B. Denial of Motion to Undertake Discovery

The petitioners allege that the immigration judges' denial of their motion to undertake discovery of the person(s) responsible for rendering an advisory opinion on their application for asylum infringes upon their right to due process of law. The Court does not agree with petitioners' position.

 The scope and conduct of discovery are well within the sound discretion of the trial courts, *Borden Co. v. Sylk,* 410 F.2d 843, 845 (3d Cir.1969), and after a final judgment of a district court or a final order of an agency, review is limited to determining whether discretion has been abused. *Montecatini Edison S.P.A. v. E.I. duPont deNemours & Co.,* 434 F.2d 70, 72 (3d Cir.1970). To find such abuse it is usually necessary to conclude that there has been an interference with a "substantial right," *Goldman v. Checker Taxi Co.,* 325 F.2d 853, 856 (7th Cir.1963), or that the discovery ruling is "seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977).

 The standard is the same in an administrative proceeding as it is in district court. In order to show that he has been denied a fair hearing, an alien must show he has suffered prejudice. *Nicholas v. INS,* 590 F.2d 802 (9th Cir.1979).

 In a recent decision, the BIA addressed the precise issue of discovery against the BHRHA. In *Matter of Exilus,* Interim Decision 2914 (BIA 1982), the petitioner was a Haitian in exclusion proceedings who was claiming asylum based on a fear of persecution. The State Department issued an advisory opinion concluding otherwise, and the petitioner sought to serve interrogatories going to the basis of that opinion. In that case, as in this case, the petitioner knew of the letter and never

sought to rebut it. The BIA held that "[w]e do not find that this applicant was denied a full and fair hearing as a result of her inability to submit interrogatories to the State Department. *Id.* at 4. The BIA also found that

she has not specified any particular prejudice which resulted from the immigration judge's refusal to permit interrogatories, nor has she indicated how the submission of interrogatories would have advanced her claim of persecution.

*Id.* at 4–5. The petitioners have likewise made no such showing.

Petitioners urge that this case is distinguishable because in this case the immigration judge handling petitioners' asylum applications acknowledged that he "prematurely denied the [applicants'] motions for taking of depositions or written interrogatories of the State Department ...." (G. Lumaine A.R. 59–60; Verne A.R. 34–35; Edmond *fille* A.R. 34; Edmond *pere* A.R. 31–32; I. Lumaine A.R. 32; LaGuerre A.R. 62–63; Baptiste A.R. 56–57; and Fidogene A.R. 32–33). However, the Court notes that the immigration judge also stated that he had "not relied upon said opinions and [found] no reason to do so." (*Id.* as to all.) Given that he did not rely on the State Department opinion and found independently that the petitioners had not met their burden, the Court finds that there was no denial of due process by the immigration judge's denial of discovery against the State Department. See, *Paul v. INS,* 521 F.2d 194 (5th Cir.1975), where the Fifth Circuit in similar facts involving Haitian petitioners held that those petitioners' challenge of a similar opinion from the State Department was not persuasive because it appeared from the record that the telegram/opinion had not influenced the opinions of either the immigration judge or the

BIA. *Id.* at 200. For the aforementioned reasons, the Court concludes that the decision of the immigration judge on the issue of discovery was sound and well within the discretionary powers of the BIA.

### C. *Asylum*

The petitioners assert that they, individually, have established their asylum claims, because they will be prosecuted upon their return to Haiti for leaving illegally without an exit visa. They also assert, but without any corroboration, that they will be persecuted if they return. Moreover, they contend that there was no evidence to show they were not entitled to asylum, because INS called no witnesses and presented no proof to rebut their showing and that the denials of asylum by the immigration judge and the BIA were an abuse of discretion. Once again, the Court does not agree with petitioners' position.

■ One who applies for asylum under § 208(a) of the Act, 8 U.S.C. § 1158(a),[5] must show that, if deported, he would be subject to persecution or that he has a well-founded fear of persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. *See* § 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). When presenting such a claim, the applicant has the burden of proof in such proceedings. *See* 8 C.F.R. 208.5; *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1042–43 (5th Cir.1982); *McMullen v. INS,* 658 F.2d 1312, 1317 (9th Cir.1981); *Fleurinor v. INS,* 585 F.2d 129, 132 (5th Cir.1978); *Kashani v. INS,* 547 F.2d 376, 379 (7th Cir.1977).

■ The burden of proof formulation, whether expressed as a "well-founded fear"[6] or synonymously as a "clear proba-

**5.** The filing of an application for asylum in exclusion proceedings is also considered as a request for withholding of exclusion under § 243(h) of the Act, 8 U.S.C. § 1253(h). 8 C.F.R. 208.3(b).

**6.** The statute was amended by the Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 102 (1980), so that it would conform with the United Nations

Protocol Relating to the Status of Refugees, 19 U.S.T. 6257, 606 U.N.T.S. 268. "The *well-founded fear* of being the victim of persecution for reasons of race, religion, nationality or political opinion *means that a person has either been actually a victim of persecution or can show good reason why he fears persecution.*" [Emphasis added] United Nations Economic & Social Counsel, Report of the Ad Hoc Committee

bility" of persecution, *Lena v. INS,* 379 F.2d 536, 538 (7th Cir.1967), *Kashani v. INS,* 547 F.2d at 379, requires the applicant to present some objective evidence which establishes a realistic likelihood that he would be persecuted in his native land for any of the above specified reasons. *See Rejaie v. INS,* 691 F.2d at 144. The demonstration of a well-founded fear of persecution must go beyond "the alien's subjective state of mind." *Kashani v. INS,* 547 F.2d at 379. The alien "must either demonstrate that he actually has been a victim or that his fear is more than a matter of his own conjecture." *Id.* at 379.

■■■■ The Court finds that the petitioners have not met their burden of proving a well-founded fear of persecution. Petitioners have not produced "objective evidence which demonstrates the realistic likelihood that [they], or a class to which [they] belong, will be persecuted." *Rejaie v. INS,* 691 F.2d at 145. In making this determination, the Court notes that evidence as to general conditions is irrelevant because "[g]eneralized, undocumented fears of persecution or political upheaval which affect a country's general populace are insufficient bases for withholding deportation under § 243(h)." *Id.* at 145.

■■■■ In reaching its conclusion, the Court also notes that there is a difference between prosecution and persecution. The possibility of an alien being lawfully prosecuted for a crime if he is returned to his native land is not a basis to withhold that person's deportation or to grant him asylum. "The prospect of imprisonment for non-political crimes in the country of deportation does not warrant a stay under 8 U.S.C. § 1253(h), *Sovich v. Esperdy,* 319 F.2d 21, 28 (2d Cir.1963) ...." *MacCaud v. INS,* 500 F.2d 355, 359 (2d Cir.1974). Punishment for leaving Haiti without an exit visa would be the consequence of prosecution rather than persecution, and not a ground for asylum.

on Statelessness and Related Problems at 39 (1950). See also *Rejaie v. INS,* 691 F.2d 139 (3d Cir.1982).

In reviewing the record, it is clear to the Court that none of these petitioners have met "the well-founded fear" standard. The petitioners' testimony, often vague and lacking credibility, leaves the Court with no real basis to find a "well-founded fear" of personal or group persecution should they return to Haiti.

Accordingly, and for the reasons outlined above, the order of the Board of Immigration Appeals is AFFIRMED.